IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

KAREN A. CARROLL,                           :
                                            :
            Plaintiff,                      :
                                            :
      VS.                                   :
                                            :            7: 12-CV-67 (HL)
CAROLYN W. COLVIN,                          :
Commissioner of Social Security[1],         :
                                            :
            Defendant.                      :
_____:

## RECOMMENDATION

Plaintiff herein filed this Social Security appeal on May 14, 2012, challenging the Commissioner=s

final decision denying her application for disability benefits, finding her not disabled within the meaning

of the Social Security Act and Regulations.   (Doc. 1).   Jurisdiction arises under 42 U.S.C. § 405(g)

and 42 U.S.C. § 1383(c).     All administrative remedies have been exhausted.

## LEGAL STANDARDS

In reviewing the final decision of the Commissioner, this Court must evaluate both whether the

Commissioner's decision is supported by substantial evidence and whether the Commissioner applied the

correct legal standards to the evidence.   *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir.

1983); *Hoffman v. Astrue*, 259 Fed. Appx. 213, 216 (11th Cir. 2007).   The Commissioner's factual

findings are deemed conclusive if supported by substantial evidence, defined as more than a scintilla,

such that a reasonable person would accept the evidence as adequate to support the conclusion at issue.

*Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th

_____

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013, and is substituted for former
Commissioner Michael J. Astrue as Defendant herein.   42 U.S.C. § 405(g); Fed. R. Civ. P. 25(d).

Cir. 1991).

In reviewing the ALJ's decision for support by substantial evidence, this Court may not reweigh the evidence or substitute its judgment for that of the Commissioner. "Even if we find that the evidence preponderates against the [Commissioner's] decision, we must affirm if the decision is supported by substantial evidence." *Bloodsworth*, 703 F.2d at 1239. "In contrast, the [Commissioner's] conclusions of law are not presumed valid. . . . The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Cornelius*, 936 F.2d at 1145-1146.

Under the regulations, the Commissioner evaluates a disability claim by means of a five-step sequential evaluation process. 20 C.F.R. § 404.1520. In Step One, the Commissioner determines whether the claimant is working. In Step Two, the Commissioner determines whether the claimant suffers from a severe impairment which significantly limits her ability to carry out basic work activities. At Step Three, the Commissioner evaluates whether the claimant=s impairment(s) meet or equal a listed impairment in Appendix 1 of Part 404 of the regulations. At Step Four, the Commissioner determines whether the claimant=s residual functional capacity will allow a return to past relevant work. Finally, at Step Five, the Commissioner determines whether the claimant=s residual functional capacity, age, education, and work experience allow an adjustment to other work.

### Administrative Proceedings

Plaintiff filed her application for Supplemental Security Income benefits on August 15, 2008. (Tr. 17, 104). Her claims were denied initially and upon reconsideration. (Tr. 17). A video hearing was held before an Administrative Law Judge (AALJ@) who presided from Savannah, Georgia on May 25, 2011. (Tr. 284-315). Thereafter, in a hearing decision dated June 9, 2011, the ALJ determined that

Plaintiff was not disabled.   (Tr. 17-28).    The Appeals Council subsequently denied review and the

ALJ=s decision thereby became the final decision of the Commissioner.   (Tr. 8-10).

***Statement of Facts and Evidence***

        The Plaintiff was fifty-three (53) years of age at the time of the hearing before the ALJ, and

alleged disability since October 30, 2007, due to diabetes, high blood pressure, asthma, and back pain.

(Tr. 294, 96).   Plaintiff earned her GED, and has past relevant work experience as an appointment

clerk. (Tr. 294, 27).

        As determined by the ALJ, Plaintiff suffers from the following severe impairments: "cervical and

lumbar strain and history of knee surgery".   (Tr. 19).   The ALJ found that Plaintiff did not have an

impairment or combination of impairments that met or medically equaled a listed impairment, and she

remained capable of performing light work except:

> claimant can sit up to eight hours total with one or more breaks, can walk
> or stand 15 minutes at a time and four hours total in an eight-hour workday.
> Claimant can perform frequent reaching and continuous handling and
> fingering. Claimant could frequently use foot controls.  Claimant could
> occasionally climb stairs, stoop, kneel, crouch, and crawl.  Claimant should
> avoid unprotected heights and can occasionally have contact with moving
> mechanical parts.

(Tr. 22).   The ALJ also determined, following the testimony of a Vocational Expert, that Plaintiff could

perform her past relevant work, and was thus not disabled.    (Tr. 27).

## DISCUSSION

        Plaintiff alleges that the ALJ erred by finding that Plaintiff had engaged in substantial gainful

activity in 2008, by failing to recontact one of Plaintiff=s consultative examiners, by failing to give

proper weight to Plaintiff=s treating physician, by failing to properly consider Plaintiff=s credibility, and

erred in determining that Plaintiff could return to her past relevant work. (Doc. 12).

***Substantial Gainful Activity***

Plaintiff maintains that the ALJ erred by finding that she had engaged in substantial gainful activity ("SGA") from January 1, 2008 through July 30, 2008.   (Doc. 12).   Both Plaintiff and Defendant agree that to be engaged in SGA in 2008 the claimant's monthly income had to be $940.00. (Docs. 12, p. 13; 13, p. 5); Substantial Gainful Activity, http://www.ssa.gov/oact/cola/sga.html.   The ALJ determined that Plaintiff earned $985.83 per month in 2008, and therefore was engaged in substantial gainful activity at that time.   (Tr. 19).   In her Work History Report, Plaintiff stated that she worked as an Appointment Specialist from September 6, 2007 to July 30, 2008; she worked six and a half hours per day, five days a week.   (Tr. 85-86).   Plaintiff earned $7.00 per hour.   (Tr. 86).

Based on the above stated evidence, in 2008, Plaintiff earned $227.50 per week ($7.00 per hour x 6.5 hours per day x 5 days per week).   Plaintiff was earning $11,830.00 per year ($227.50 per week x 52 weeks per year).   Plaintiff earned $985.83 per month ($11,830.00 per year / 12 months per year). Plaintiff earned more than $940.00 per month, and was therefore engaged in substantial gainful activity from January 1, 2008 through July 30, 2008.   Accordingly, the ALJ did not err in finding that Plaintiff was engaged in substantial gainful activity in 2008.

***Recontacting Consultative Examiner***

Plaintiff alleges that the ALJ erred when he did not recontact Dr. Peach, a consultative examiner, for clarification of Dr. Peach's opinion.   (Doc. 12).   "[T]he ALJ has a basic obligation to develop a full and fair record."   *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997).   If a report from a consultative examiner is inadequate or incomplete, the Commissioner will contact the medical source, "give an explanation of [the] evidentiary needs, and ask that the medical source furnish the missing information or prepare a revised report."   20 C.F.R. §§ 404.1519p(b), 416.919p(b).   The agency will

4

ordinarily request a medical source statement as part of the consultative examination process; however, one is not required and will not make the report incomplete.   20 C.F.R. § 404.1519n(c)(6); *Ponder v. Astrue*, 2013 WL 1760596, *9 (N.D. Ala., April 24, 2013).

The ALJ found that Dr. Peach's findings were "entirely inconsistent with his opined limitations". (Tr. 26).   He did not determine that the report was inadequate or incomplete.   Thus, the ALJ did not need to recontact Dr. Peach for clarification.   Furthermore, since Dr. Peach "was not required to provide a functional capacity opinion, the ALJ had no duty to recontact him for an explanation of his findings."  *Ponder*, 2013 WL 1760596 at 9.   Accordingly, the ALJ did not err when he chose not to recontact Dr. Peach.

### *Treating Physician*

Plaintiff alleges that the ALJ failed to give proper weight to Dr. Andrew Dekle, Plaintiff's treating physician, when determining Plaintiff's residual functional capacity.   (Doc. 12).   The determination of the residual functional capacity is an administrative assessment based on all the evidence of how Plaintiff's impairments and related symptoms affect her ability to perform work-related activities. 20 C.F.R. § 404.1545(a); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).   The regulations state that the final responsibility for assessing a claimant's residual functional capacity rests with the ALJ, based on all the evidence in the record. *See* 20 C.F.R. §§ 404.1527(d)(2), 404.1545(a)(3), 404.1546(c), 416.927(e)(2), 416.945(a)(3), 416.946(c).   Relevant evidence includes medical reports from treating and examining sources, medical assessments, and descriptions and observations of a claimant's limitations by the claimant, family, neighbors, friends, or other persons. *See* 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3).

When assessing the evidence, "[t]he testimony of the treating physician must ordinarily be given

5

substantial or considerable weight unless good cause is shown to the contrary." *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986). The Commissioner's regulations also state that more weight should be given to opinions from treating sources because they can provide a detailed look at the claimant's impairments. 20 C.F.R. § 404.1527(c)(2). "The ALJ must clearly articulate the reasons for giving less weight to the opinion of a treating physician, and the failure to do so is reversible error." *Lewis*, 125 F.3d at 1440. "Good cause" as to why the Commissioner did not rely on the treating source's opinion can exist when the physician's opinion was not supported by the record evidence, the evidence supported a contradictory finding, or the physician's opinion was conclusory or inconsistent with the physician's own medical records. *Id.*

The ALJ gave no weight to Dr. Dekle's opinion evidence because his opinion was not consistent with the record evidence, and was not consistent with his own findings. (Tr. 25). Dr. Dekle submitted a Residual Functional Capacity Questionnaire, wherein he opined that Plaintiff's symptoms would frequently interfere with the attention and concentration required to perform simple work related tasks. (Tr. 275). He opined that Plaintiff could sit for sixty minutes and stand/walk for five minutes at one time, could sit for four hours and stand/walk for two hours in an eight-hour workday, and that she would need to take thirty minute breaks every two hours during an eight-hour workday. (Tr. 275). Plaintiff could occasionally lift less than ten pounds, but could never lift twenty pounds or more. (Tr. 276). Dr. Dekle found that Plaintiff was not limited in repetitive reaching, handling, or fingering. (Tr. 276).

The treatment notes do not support the severity of limitations opined by Dr. Dekle. Dr. Dekle's treatment notes indicate that Plaintiff was typically seen by Dr. Dekle for general complaints, such as chest pain, shortness of breath, congestion, and headaches. (Tr. 230-46). Plaintiff was seen for pain in

her lower back, down her left leg, on July 30, 2008.  (Tr. 236).   At that appointment, Plaintiff had "positive straight leg raising", and Dr. Dekle found she had "DDD" (degenerative disc disease).   (Tr. 236).   Plaintiff was prescribed Naprosyn and Flexeril (Tr. 236), but there is no indication of other diagnostic tests or treatment following this single straight leg test.     In March of 2009, both Plaintiff's blood sugar and blood pressure were "good".   (Tr. 233).   Dr. Dekle's treatment notes indicate only minimal treatment for lower back and leg pain; however, he opined that Plaintiff was severely restricted in her ability to sit, stand, and walk during an eight-hour workday.   Dr. Dekle's notes also do not support the opinion that Plaintiff is limited in her ability to concentrate, or in her ability to lift. Accordingly, Dr. Dekle's treatment notes are inconsistent with his opinion of Plaintiff's limitations.

The evidence contained in the record also fails to support Dr. Dekle's assessment.   In 2005, Plaintiff was treated with "conservative chiropractic care" for lower back pain and neck pain, without any work restrictions.   (Tr. 154-55).   On April 20, 2009, an x-ray of Plaintiff's lumbar spine was taken. (Tr. 200).   The x-ray showed moderately advanced L5-S1 spondylosis, but there was "no displaced fracture or bony destructive lesion."   (Tr. 200).   In October of 2010, Dr. Peach found Plaintiff's gait was normal without an assistive device; her heel-toe standing, grip, and dexterity were normal; and "Spurling's", "Tinel's", and "straight leg raise" tests were all negative.   (Tr. 261).   Dr. Dekle's opinion is therefore not supported by medical evidence contained in the record.

Additionally, the ALJ properly discredited Dr. Dekle's opinion because Dr. Dekle submitted the questionnaire in March of 2011, but had not treated Plaintiff since January of 2010.   (Tr. 25); *see Sanabria v. Commissioner of Soc. Sec.*, 303 Fed.Appx. 834, 838 (11th Cir. 2008) (one factor relied on by the ALJ when determining what weight to give a treating physician is "the length of the treatment relationship and the frequency of examination").

The ALJ determined that Dr. Dekle's opinion was inconsistent with his own medical records, was not supported by the record evidence, and was given over a year after Dr. Dekle last treated Plaintiff. The ALJ clearly articulated his reasoning for not relying on Dr. Dekle's questionnaire, and his decision was supported by substantial evidence; thus, the ALJ did not commit reversible error when he gave no weight to Dr. Dekle's opinion.

### *Plaintiff's Credibility*

Plaintiff alleges that the ALJ erred when he assessed Plaintiff's credibility.   (Doc. 12).   If the Commissioner "finds evidence of an underlying medical condition, and either (1) objective medical evidence to confirm the severity of the alleged pain arising from that condition, or (2) that the objectively determined medical condition is of a severity which can reasonably be expected to give rise to the alleged pain," then she must consider the claimant's subjective testimony of the symptoms. *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992).

To determine if Plaintiff's statements of an alleged symptom are credible, the ALJ must consider the intensity, persistence, and limiting effect of the symptoms, using Plaintiff's testimony, including activities of daily living, and objective medical records as evidence.   20 C.F.R. § 404.1529(c).   The ALJ must consider the record as a whole, including objective medical evidence, the individual's own statements about the symptoms, statements and other information provided by treating or examining physicians, psychologists, or other individuals, and any other relevant information.   SSR 96-7p.

After discussing in detail Plaintiff's testimony and subjective complaints, the ALJ determined that:

> After careful consideration of the evidence, the [ALJ] finds that the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

8

(Tr. 24).

The ALJ found Plaintiff to be less than credible for several reasons.   The ALJ determined Plaintiff lacked overall credibility with respect to representations made to government agencies because she had failed to report her earnings or otherwise pay any income or payroll taxes during 2007 and 2008.   (Tr. 22).   Plaintiff also lacked credibility because she alleged disability since October of 2007, yet worked until July of 2008.   (Tr. 22-23).   Additionally, Plaintiff testified that she was unable to afford healthcare; however, the record shows that she chose to buy cigarettes instead of her diabetic medication, and although Plaintiff stated she could not afford her doctor visits of $35, she could afford to smoke every day.   (Tr. 23, 232).   Plaintiff's testimony also included several statements that were inconsistent with the record, which the ALJ determined undermined Plaintiff's credibility.   (Tr. 23-24).

The information Plaintiff provided to her doctors concerning her activities of daily living was inconsistent with the information provided to the ALJ during her hearing.   (Tr. 23, 248, 261, 298).   Furthermore, Plaintiff's statements regarding her ability to perform household chores was inconsistent during the hearing before the ALJ.   (Tr. 298).   The ALJ also found Plaintiff's descriptions of debilitating back pain were not supported by the objective medical evidence.   (Tr. 24).   The objective medical evidence shows Plaintiff has moderately advanced L5-S1 spondylosis, and tested positive in 2008 for a straight leg test.   (Tr. 200, 236).   However, in 2010, Plaintiff had a normal gait, normal heel-toe standing, and her straight leg test was negative bilaterally.   (Tr. 250, 261).   The report from 2010 also revealed that Plaintiff had a normal range of motion in all her joints.   (Tr. 262-65).   Further, Plaintiff has not consistently complained of her debilitating back pain to her treating physician.   (Tr. 24, *see* 230-46).

The ALJ applied the correct legal standard, in that, he relied on the record as a whole to

9

determine that Plaintiff's testimony was not credible.   The ALJ adequately considered Plaintiff's

subjective accounts of symptoms and physical limitations, and did so pursuant to the governing rulings

and regulations.   The ALJ also provided adequate and specific reasons for discrediting Plaintiff's

subjective accounts, relying on Plaintiff's daily activities, the objective medical evidence, Plaintiff's lack

of treatment, and several other inconsistencies between Plaintiff's testimony and the record.   As there is

substantial evidence to support the ALJ's credibility determination, the ALJ did not commit reversible

error.

**Past Relevant Work**

Plaintiff maintains that the ALJ erred in finding that Plaintiff could return to her past relevant

work as an appointment clerk because the ALJ erred in developing the record, determining Plaintiff's

residual functional capacity ("RFC"), determining Plaintiff's credibility, finding Plaintiff's position as an

appointment clerk was substantial gainful activity, and because the ALJ failed to properly consider the

mental demands of the job.   (Doc. 12).   The Court has found the ALJ did not err in his development

of the record, in determining Plaintiff's RFC, in determining Plaintiff's credibility, and in determining

that Plaintiff was engaged in substantial gainful activity while working as an appointment clerk.

Therefore, these assertions do not support the contention that the ALJ erred in his determination that

Plaintiff could return to her past relevant work.

A claimant bears the burden of proving that she cannot perform her past relevant work either as

she performed it or as it is generally performed in the national economy.   *See Doughty v. Apfel*, 245

F.3d 1274, 1278 (11th Cir. 2001); *Macia v. Bowen*, 829 F.2d 1009, 1012 (11th Cir. 1987); *Jackson v.

Bowen*, 801 F.2d 1291, 1293-94 (11th Cir. 1986).   An ALJ must use all the relevant evidence in the

case to determine if an individual has the RFC to perform the physical and mental demands of her past

relevant work.   *See* SSR 86-62; *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004).   If the

ALJ determines that an individual can return to her past relevant work, the ALJ's decision must

contain: (1) a finding of fact as to the individual's RFC; (2) a finding of fact as to the physical and

mental demands of the past job; and (3) a finding of fact that the individual's RFC would permit a

return to her past work.   SSR 82-62.   The ALJ may use the testimony of a vocational expert ("VE")

to determine if Plaintiff can return to her past work.   *Hennes v. Comm'r of Soc. Sec. Admin.*, 130 Fed.

Appx. 343, 346 (11th Cir. 2005); 20 C.F.R. § 404.1560(b)(2).

The ALJ questioned a VE to help determine if Plaintiff could return to her past relevant work.

(Tr. 306-12).   The ALJ asked the VE if an individual with Plaintiff's age, education, work experience,

and RFC could perform any of Plaintiff's past relevant work as Plaintiff performed it.   (Tr. 308).   The

VE testified that an individual with Plaintiff's RFC could perform Plaintiff's past relevant work as an

appointment clerk.   (Tr. 308).

Plaintiff asserts that the ALJ erred because he did not take into account the mental demands of

her past work.   (Doc. 12).   While Plaintiff cites to two record cites which indicate the job caused

Plaintiff stress, Plaintiff has not cited to any diagnosed mental impairments that would limit Plaintiff's

ability to perform her past relevant work.   The ALJ did not find that Plaintiff's RFC required any

mental limitations, and as such the ALJ did not need to consider the mental demands of Plaintiff's past

relevant work.   *See* SSR 82-62 ("Adequate documentation of past work includes factual information

about those work demands *which have a bearing on the medically established limitations.*")(emphasis

added); *Hovey v. Astrue*, 2010 WL 5093311, *14 (M.D. Ala., Dec. 8, 2010) ("The court does not read

SSR 82-62 to require an express finding or discussion regarding the mental demands of past work

where the claimant's RFC includes no mental limitations."); *Williams v. Astrue*, 2009 WL 1922208, *6

(M.D. Fla., July 2, 2009) (finding remand for further explanation of the mental demands of the plaintiff's past relevant work would serve no useful purpose, "particularly in light of the lack of a severe mental impairment").   As there is substantial evidence to support the ALJ's decision that Plaintiff could perform her past relevant work, the ALJ did not err.

CONCLUSION

As the Commissioner's final decision in this matter is supported by substantial evidence and was reached through a proper application of the legal standards, it is the recommendation of the undersigned that the Commissioner's decision be **AFFIRMED** pursuant to Sentence Four of § 405(g).   Pursuant to 28 U.S.C. § 636(b)(1), the parties may file written objections to this Recommendation with the Honorable Hugh Lawson, United States District Judge, WITHIN FOURTEEN (14) DAYS after being served with a copy of this Recommendation.

**SO RECOMMENDED**, this 2nd day of July, 2013.

s/ *THOMAS Q. LANGSTAFF*
**UNITED STATES MAGISTRATE JUDGE**

llf